**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **KIRK C. CAMPBELL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **VS.** | : | **NO. 5:10-CV-303 (MTT)** |
| | : | |
| **THOMAS HARVILL, *et al.*,** | : | |
| | : | **Proceedings Under 42 U.S.C. § 1983** |
| **Defendants.** | : | **Before the U.S. Magistrate Judge** |
| _____ | : | |

<u>RECOMMENDATION</u>

On August 16, 2010, Plaintiff Kirk C. Campbell filed the above-captioned action pursuant to 42 U.S.C. § 1983 alleging that Defendants Thomas Harvill, Barclay Banta, Curtis Carter, Alexander Daniels, and Chad Littlejohn applied excessive physical force, and that Defendants David Etheridge, Dwain Williams, and Jesse Floyd failed to protect Plaintiff, all in violation of Plaintiff's Eighth Amendment rights. Doc. 1. Following the close of discovery, Defendants filed a Motion for Summary Judgment asserting that Defendants are entitled to judgment as a matter of law. Doc. 29. Because the evidence in the record before the Court presents a genuine dispute of material fact, it is **RECOMMENDED** that Defendants' Motion be **DENIED**.

<u>LEGAL STANDARD</u>

In accordance with <u>Rule 56</u> of the <u>Federal Rules of Civil Procedure</u>, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

1

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Cleotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law." Id. at 324-26. If the evidence presented by the non-movant is "not significantly probative" or is "merely colorable," then summary judgment must be granted. Anderson, 477 U.S. at 249. In fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

<u>DISCUSSION</u>

The evidence in the record of this case presents genuine issues of material fact regarding Plaintiff's claims that Georgia Diagnostic and Classification Prison (GDCP) officers used excessive force against him and failed to protect him in violation of the Eighth Amendment on January 21, 2010. In ruling on a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. For the purposes of this motion, therefore, the facts are taken primarily from Plaintiff's deposition testimony.

Plaintiff testified in his deposition that the use of force occurred during a routine "shakedown" at the GDCP. Pl. Deposition (Doc. 29-17). During a shakedown, prison officers

and CERT team officers would handcuff the inmates[1] and take inmates out of their cells and search for contraband. Harvill Aff. (Doc. 29-3). Prisoners would then be escorted by the officers to the showers. When Defendant Officer Harvill came to Plaintiff's cell and told Plaintiff to strip down to his underwear and walk to the showers, Plaintiff asked to speak to Defendant Lieutenant Williams, complaining that the two white inmates taken before Plaintiff had been allowed to wear their clothes. Pl. Dep. (Doc. 29-17). Defendant Williams informed Plaintiff that every inmate was to be stripped down to his boxers, and that it had been a mistake to allow the two white inmates to keep their clothes on.

Plaintiff was restrained, with his hands cuffed behind his back and his feet shackled, and was taken out of his cell by Defendant Harvill and another officer.[2] As Defendant Harvill was escorting Plaintiff, Defendant Harvill "began [sic] shaking me and slamming me through the pole by my arm…then he grabbed me and slammed me into the wall…from one side to the other side." Pl.'s Dep., p. 24-25 (Doc. 29-17). Defendants Officer Banta and Officer Carter then grabbed Plaintiff by his arms and slammed Plaintiff face first on the floor. After Plaintiff was lifted, Defendants Officer Littlejohn and Officer Carter picked up Plaintiff and slammed him face first on the ground for a second time. While Plaintiff was on the ground, Officer Daniels, who weighed 300-pounds and was a cadet at the time, jumped on Plaintiff and kneed Plaintiff in the back of the head. Plaintiff's tooth was "knocked out," and his mouth began to bleed heavily.

---

[1] Before being removed from the cell, the inmate would place his hands through the tray flap in his cell door so they could be handcuffed by the officer on the other side of the door. Once the inmate has been handcuffed, the cell door is opened. Inmates are not permitted to be outside of their cells without being handcuffed. Harvill Aff. (Doc. 29-3).

[2] Plaintiff's testimony is inconsistent as to when he was placed in leg restraints. In his Complaint, Plaintiff states that he was shackled by Officers Banta and Carter after they pushed him on the floor. In his deposition, however, Plaintiff states that he was shacked immediately after being taken from his cell. In both accounts, Plaintiff maintains he was shackled at the time Officers Littlejohn and Carter picked him up and threw him on the ground.

Plaintiff asserts that Defendants Williams, Lieutenant Floyd, and Officer Etheridge were all watching and failed to intervene to stop the other officers from assaulting Plaintiff.

Plaintiff was then escorted to medical by Defendants Littlejohn and Carter. Defendants have submitted surveillance video of Plaintiff being led to medical.[3]  The video shows that Plaintiff was very upset and yelling "they knocked my tooth out" while he was being escorted to medical. Def.'s Ex. N (Doc. 30). Plaintiff then turned aggressively toward an officer and was taken to the ground again. It is unclear in the video whether Plaintiff turned and spit on the officer or whether Plaintiff turned to shout at the officer. Plaintiff was then escorted to medical without any further incident.

Plaintiff's medical records show that he suffered a contusion on his right lip, bleeding from the mouth, chipped front right incisor, and redness from pressure to his shoulders, neck and knee. Pl.'s Comp. (Doc. 1); Def.'s Ex. M (Doc. 29-15). Plaintiff also complained of pain in his mouth, head, and back.

In addition to his own testimony, Plaintiff has submitted signed sworn statements from inmates Robert Watkins, Anthony Jernigan, and Bobby Minor. Pl's Comp. (Doc. 1). All three witnesses stated that they observed Defendant Harvill choking Plaintiff and other officers throwing Plaintiff on the ground and slamming his face on the ground. The inmates also stated that they witnessed Defendant Daniels jump on Plaintiff and knee him in the head. The witness also indicated that Plaintiff was bleeding heavily from his mouth.

Defendants have contested Plaintiff's testimony. Through affidavits, Defendants have testified that Plaintiff became unruly after being told to strip down to his boxers to be taken to

---

[3] Defendants did not submit any video evidence of the alleged use of force. In their response to Plaintiff's requests for production, Defendants acknowledged that there were two cameras in the wing where the initial use of force occurred, but stated that GDCP only retained the footage from those cameras for fourteen days, and that the footage no longer existed.  See Pl.'s Ex. A (Doc. 35-1, pp. 5-6).

the showers. Specifically, Defendants state that Plaintiff began calling the officers "racists" and tried to jerk away from Defendant Harvill and Officer Ard[4]. Harvill Aff. (Doc. 29-3). Defendants state that after Plaintiff attempted to jerk away from the officers, Plaintiff was "taken to the ground" to be controlled. Defendant Harvill testifies that after Defendant Harvill and Officer Ard stood Plaintiff back onto his feet, Plaintiff attempted to jerk away again. Plaintiff was able to free himself of Defendant Harvill's grasp, and Plaintiff then kicked Defendant Harvill in the groin area. Plaintiff was then taken down by Defendants Harvill and Daniels.  Defendants state that while Plaintiff was on the floor, Defendants Banta, Littlejohn, and Carter immediately responded and took control of the situation. Specifically, Defendants state that they placed Plaintiff in leg restraints and took him to medical. Defendants maintain that all forced used was necessary to control Plaintiff.

Statements made by the officers in the internal investigation immediately after the incident are somewhat inconsistent with the testimony in Harvill's affidavit.  In his affidavit, Harvill testifies that Campbell kicked him in the groin after he and Ard returned Plaintiff to his feet.  In his sworn statement on February 2, 2011, however, Harvill stated that Plaintiff "[tried] to kick me in the groin area." Pl.'s Ex. I (Doc. 35-1, p. 48).  Defendant Williams also stated that Plaintiff "kicked at" Harvill after he stood up. Pl.'s Ex. L (Doc. 35-1, p. 57). Defendant Daniels stated that Plaintiff actually kicked Harvill in the groin twice, once before he was taken down, then a second time after he was returned to his feet.  Pl.'s Ex. J (Doc. 35-1, p. 51).   Cadet Brazil did not mention anything about a kick, but stated that he assisted in taking Plaintiff to the floor after he observed Plaintiff "snatch away from the escorting officer in an aggressive manner." Pl.'s Ex. M (Doc. 35-1, p. 60).

---

[4] Officer Ard is not named as a defendant.

After the incident, Defendant Harvill executed a disciplinary report against Plaintiff for failing to following instructions, as well as for assaulting an officer due to the kick in the groin area. Mintz Aff. (Doc. 29-12). Earnest Mintz, the hearing officer for Plaintiff's disciplinary hearing, testifies that after reviewing the evidence supporting the charges, he found that Plaintiff was guilty only of failing to follow instructions. Id. ¶ 7. Mintz states that he reviewed footage from the security cameras in C-wing, but that "the quality of the footage was grainy" and the view obstructed by the numerous officers on the scene. Id. ¶ 8.  Because the video was inconclusive, Mintz found that there was not sufficient evidence to support a charge that Plaintiff kicked Defendant Harvill. Id. This video has not been produced, and Defendants maintain that it was destroyed after fourteen days according to prison policy. See Pl.'s Ex. A (Doc. 35-1, pp. 5-6).

### Use of excessive force

The evidence in this case presents genuine issues of material fact regarding the force used by Defendants while Plaintiff was escorted to the showers on January 21, 2010. The use of force against a prison inmate is governed by the Eighth Amendment prohibition of cruel and unusual punishment. To establish a claim of excessive force under the Eighth Amendment, an inmate must present evidence to show that the force was applied "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320-21 (1986). Courts evaluating claims of excessive force consider five factors "relevant to ascertaining whether force was used 'maliciously and sadistically for the very purpose of causing harm.'" Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting Whitley, 475 U.S. at 321). These five factors are:

    (1)    the extent of the injury;

    (2)    the need for application of force;

(3)    the relationship between that need and the amount of force used;

(4)    any efforts made to temper the severity of a forceful response; and

(5)    the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

Id.

The evidence in this case raises genuine issues of material fact regarding the need for the application of force and the relationship between that need and the amount of force used by Defendants. It is undisputed that Defendants used force against Plaintiff. Both parties indicate that Defendants took Plaintiff to the ground multiple times and that Plaintiff suffered bruises and mouth injuries as a result of the force used by Defendants. The parties do not agree, however, about the circumstances that led to Plaintiff's take-down and the amount of force used by Defendants once Plaintiff was on the ground.

Plaintiff's evidence indicates that he was restrained and compliant after being taken from his cell. When prison officers continue to use force against a prisoner who has surrendered or has become compliant, the need for force ceases. Skrtich, 280 F.3d at 1304. Both parties agree that Plaintiff was handcuffed the entire time. Plaintiff maintains that he was also in foot shackles when Defendants jumped on him and when Defendant Daniels kneed him in the back of the head. Plaintiff testified that he was nevertheless slammed against the wall, thrown on the floor multiple times, and jumped on and kicked by an officer who weighs approximately 300 pounds.

In Plaintiff's version of the facts, the use of force appears to have been intended as retaliation for Plaintiff's calling Defendants racist. Defendants, in their arguments, focus on the need for force after Plaintiff was insubordinate and had kicked Defendant Harvill in the groin area. There is evidence in the record, however, that this kick did not occur. Plaintiff himself has testified that he did not kick Harvill. In the internal investigation of the incident, the officers gave

7

inconsistent statements about the kick. Some stated that Plaintiff only tried to kick Harvill. Others stated that Plaintiff actually did kick Harvill in the groin. One officer stated that he witnessed Plaintiff kick Harvill in the groin twice. Another officer, Cadet Brazil, did not see any kick at all. After a disciplinary hearing regarding the alleged assault, Plaintiff was found not guilty of assaulting an officer because it could not be concluded through video evidence that the kick occurred. The video that was determinative at the disciplinary hearing was not provided to the Court, although Defendants were able to produce another video taken shortly after the incident, when Plaintiff was being taken to medical.

Defendants contend that Plaintiff's testimony is so lacking in credibility and so thoroughly contradicted by other evidence that it cannot create a genuine issue of material fact. Defendants focus particularly on the limited evidence of Plaintiff's physical injuries and the video evidence of the final moments of Plaintiff's escort to medical. Plaintiff's medical records, however, show that Plaintiff suffered from a chipped tooth, mouth contusions, and redness on his neck and knees. Such injuries are consistent with more than a *de minimis* use of force. The video evidence produced by Defendants does not fully contradict Plaintiff's testimony. This video was taken after the use of force and is not probative of the need for force at the time. [5]   The video shows Plaintiff bleeding from the mouth and complaining of his broken tooth, but is not clear as to whether Plaintiff spit on Defendants. In evaluating the credibility of the Defendants' testimony, a jury might consider the fact that this later video was retained and produced while video of the actual use of force incident has not been produced and was apparently destroyed.

---

[5] The video provided by Defendants was recorded by Defendant Floyd using a handheld video camera. After witnessing the use of force, Defendant Floyd immediately ran to retrieve three video cameras to document the situation. The video recording with the most footage and highest quality was provided to the Court. Floyd Aff. (Doc. 29-8).

**Failure to protect**

An officer who is present at the scene and fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance. <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1301 (11th Cir. 2002). To be held liable for his nonfeasance, an officer (1) must have observed or had reason to know that excessive force would be or was being used, and (2) must have had both the opportunity and the means to prevent harm from occurring. <u>Carr v. Tatangelo</u>, 338 F.3d 1259, 1274, n.27 (11th Cir. 2003); <u>Riley v. Newton</u>, 94 F.3d 632, 635 (11th Cir. 1996). Plaintiff's evidence, if believed, would indicate that Defendants Williams, Etheridge, and Floyd observed the force being used against Plaintiff and had an opportunity to prevent the harm from occurring.

**Qualified Immunity**

Given the genuine issues of material fact regarding the nature and severity of the force used against Plaintiff, Defendants have not demonstrated that they are entitled to qualified immunity as a matter of law. As set forth above, the beating described in Plaintiff's testimony would constitute an excessive use of force in violation of the Eighth Amendment. In the Eleventh Circuit, the defense of qualified immunity is not available in cases where it is shown that force was used "maliciously and sadistically to cause harm." <u>Skrtich</u>, 280 F.3d at 1301. "There is simply no room for qualified immunity when the plaintiff alleges such a violation." <u>Id.</u> Additionally, it is established in the Eleventh Circuit that "officer has a duty to intervene when another officer uses excessive force." <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1560 (11th Cir. 1993).

Because the disputed evidence in this case presents genuine issues of material fact that must be resolved at trial, Defendants are not entitled to judgment as a matter of law.

Accordingly, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom the case is assigned **WITIHIN (14) DAYS** after being served with a copy thereof.

SO RECOMMENDED, this 14th day of February, 2012.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge